We'll hear argument this morning in Case 20-1472, Boechler v. the Commissioner of Internal Revenue. Ms. Sherry? Mr. Chief Justice, and may it please the Court, this Court has repeatedly held that time limits are rarely jurisdictional and that if Congress wants to make them jurisdictional, it has to speak clearly. Section 6330d1 does not have the needed clarity. The first clause reads like an ordinary statute of limitations. It says what the taxpayer may do, and it says nothing about the tax court's jurisdiction. The second clause does speak to jurisdiction, but the only reference back to the first is through the two words such matter. Now, we think such matter refers to a petition to the tax court for review of a CDP determination. The Commissioner agrees, but he says it also refers to the 30-day deadline to file that petition. Our reading is more natural. It stops at the closest reasonable antecedent, and it uses the word matter as it's ordinarily understood. The Commissioner's reading requires more work, and it requires this Court to treat the time limit the same as subject matter in the context of subject matter jurisdiction. If nothing else, it is far from clear. The statutory history resolves any doubt. As originally enacted, the same time limit governed the tax court and the district courts, and it was not jurisdictional. The relevant language has not changed. It has to mean the same thing today as it did in 1998. Congress enacted this collection due process regime in order to protect taxpayers from IRS abuses. It would not have included a rare and harsh jurisdictional deadline to close those courthouse doors, let alone through a vague parenthetical reference to such matter. And equitable tolling easily follows from that. That is the presumption, and it is not overcome here. The limitations period looks just like the one in Irwin, and it looks nothing like the deadlines in Brokamp. The CDP regime is remedial, and it is a place where equity finds a comfortable home. I welcome the Court's questions. Ms. Sherry, why would Congress permit the tax court to consider an untimely action but then not allow it to enjoin a levy action? So I think that goes to that final sentence in E1, and our view is that the word timely in that final sentence is not self-defining. E1 does not decide what is timely. If you want to decide what is timely, you have to look at the statute of limitations itself in D1 and the rules that govern that statute of limitations. That includes things like the mailbox rule. It includes statutory tolling, and it includes equitable tolling. And so our view is whether or not equitable tolling is available is a separate question, but E1 doesn't answer that. And so just to directly answer Your Honor's question, our reading of the final sentence in E1 is that it gives the tax court authority to enjoin as long as it has authority to actually decide the merits of the case. And if equitable tolling is available and warranted, then those petitions are deemed timely under that final sentence. And so the incongruity that the Commissioner points to we just don't think exists. We think looking at the language of the statute of limitations itself in D1, we think we have the better reading of that language, but we think at the very least the Commissioner's reading is very far from clear. The statutory history we think is really compelling here. It's on page 14A of the blue brief, and if you look at that language at the time, it's the very same 30-day time limit. It just applied to two different courts. Before you get too far along on the legislative history, I want to focus a little more on the actual language. As it reads, it's not just a filing rule. It refers to the jurisdiction of the court and how that jurisdiction is confirmed. It's by the filing within 30 days. I mean, I understand if it were a provision that said, you know, the petition for review shall be filed within 30 days and, you know, take it from there. That's one that I think we would clearly apply equitable estoppel to. But it triggers the jurisdiction of the court, and there we usually have a stricter rule. You don't want jurisdiction, the power of the court, to be, oh, okay, it's 30 days. Yeah, maybe it's 60 days. Maybe it's 90 days, depending upon the facts, and you're going through a factual inquiry of some length about whether or not you should accept it. We're talking about the power of the court, and here that is directly connected to the filing. So we don't think it's directly connected. You're absolutely right. The word jurisdiction appears in this provision, and this is a jurisdiction-conferring provision. It does give jurisdiction to the tax court to hear these sorts of petitions. The question is whether the jurisdiction is actually linked to the time limit, and we don't think it is. If you look at the language of D-1, the only link that they point to is in this parenthetical phrase, and it's the word such matter. The ordinary meaning of matter is subject matter, case, controversy, and it's perfectly natural to say that a court or a tribunal has jurisdiction over a notice of appeal or a petition for review. It's also perfectly natural to say they have jurisdiction with respect to a particular kind of petition for review here, a CDP determination. It is a stretch to say that matter refers back to time limit. That's just not how the term is ordinarily used, and I think that is emphasized further by this court. Well, but, I mean, I guess we can diagram the sentence, and it's been a while since I've done that, but it refers back to such matter. The matter is a determination, and it's a determination of something filed within 30 days. And so I don't think that's the clear antecedent here. I mean, let me start with the fact that we're talking about such matter, and the initial difficulty is the word matter doesn't appear anywhere else in the sentence. So under, you know, Garner's usage guide, there's an automatic sort of vague question there of what we're referring to. The other problem is when you try to go back and find a reference point, you know, we both agree that it has to refer to the petition, but the petition here is a verb. We have to convert it to a noun, so we're already both doing some work to try to make this sentence make some grammatical sense. But I think the other thing I would point your honor to is this court's decision in Weinberger v. Selfie and also Auburn Regional. I mean, in Weinberger, the provision that had the time limit was the jurisdictional conferring provision. It was 405G. It was the only reason that the court had jurisdiction, because the court had said that 1331 didn't apply. And 405G had both, you know, the conferral of jurisdiction and also the time limit, and yet that time limit was deemed to be non-jurisdictional. I'd also point to Auburn Regional. I mean, there was a provision. It was the same conditional clause. It said a provider can get a hearing if three things happen. Number one, there's a final determination. Number two, there's a certain amount in controversy. And number three, there's a particular time limit. And the court appointed amicus there argued, well, one and two are jurisdictional, and so three should be as well, the time limit. And this court unanimously rejected that reading. And so I think, you know, we can certainly start by looking at the fact that this is a jurisdiction conferring provision, but it doesn't really answer the question because there has to be a more direct link between the time limit and the phrase such matter. Counsel, the chief just said that matter referred to determination in his question because that's logical, isn't it? Matter suggests a noun, and the closest antecedent noun is determination. Yet, and in fact, if you read Section 6330D3, it provides that the IRS Appeals Office shall retain jurisdiction with respect to any determination made under this section. So the statute by its own terms in another provision is making clear that jurisdiction is tied to determination, not petition. The 30-day period, the 30-day limitation is tied to the petition, not to the determination, correct? It is. And let me be clear. I mean, we think that it is. Counsel, I'm not trying to hurt you. I'm actually trying to help you. And I agree with you. I'm the one she's trying to hurt. No, no, no. And I, you know, I agree with you. We have this on page 30 of our blue brief. We offer such determination up as an alternative way of reading this. Frankly, the reason we didn't put it as our primary is we understand that normally Congress uses the same words to mean the same things, but we also recognize that this Court's cases say that's not always the case. It's not always the case, but it's the logical grammatical rule, which is the last antecedent is to the last thing spoken of, and the last thing spoken of in this provision is determination. That's absolutely right, and I'm certainly not going to fight that, because I think it's really easy to see that if the reference point is determination, then the time limit is not jurisdictional because there's no link at all in those circumstances. What do you make of the ‑‑ I'm sorry, were you finished? No, go ahead. What do you make of the fact that this reference to jurisdiction is in a parenthetical? I think it helps us. You know, usually jurisdiction is something that is very important, particularly with respect to time limits, and so normally something in a parenthetical is a bit of an aside, and so it seems strange to have this harsh and rare jurisdictional rule when it comes up only in a parenthetical. I think if you go to the original enactment, it's maybe easier to understand why Congress put this in and why Congress put it in a parenthetical. At that time, both the district court and the tax court had jurisdiction, but Congress didn't have to confer jurisdiction on the district court to hear these cases because it already had jurisdiction under 1331, under 1340. The tax court didn't. The tax court's jurisdictional authority comes from 7442, and that provision essentially just says the tax court shall have jurisdiction as conferred elsewhere in this title, and so Congress had to give the tax court jurisdiction over this new CDP petition, and so that's why it's in the tax court subparagraph and it's not in the district court subparagraph. But that just, you know, emphasizes the fact that normally when you're talking about subject matter jurisdiction, you're talking about a class of cases, and so it's perfectly natural for it to refer to what the determination is or what the petition is. It is a big stretch to say that it links back to the time limit, and the reason why is the reason why we have a clear statement rule in the first place, because there are really harsh consequences for calling a time limit jurisdictional. I mean, we're here today talking about equitable tolling, but it's not just... Well, can I interrupt right there? Because I think this is somewhat different contextually than some of the other provisions we've had over the years, because here if you miss the time limit, you're not boxed out entirely, as the government points out. You could pay and sue for a refund, so there's that avenue for proceeding, and there's also maybe not applicable to this case, but in many of the cases covered by this, there's also the opportunity for the pre-assessment determination as well. So it seems to me contextually Congress has a scheme here where there are other paths for someone to proceed, even if you miss the deadline. What's your response to that? Yeah, so I think two responses. One is those two alternatives existed at the time in 1998, and Congress obviously didn't think they were sufficient to protect the taxpayer, and the reason Congress thought that is neither of those provided protection to prevent a levy before it actually happens, and what Congress was trying to do here is to have the IRS be treated more like a private creditor, where there actually was an external judicial check before the IRS is able to levy on a taxpayer's property. The second answer I have, and I think you alluded to this, is those options are not available to everyone. Deficiency proceedings are only available if it's a type of tax or penalty for which you can get a notice of deficiency. My client's an example of where that's not the case, but there's also a number of cases in which someone just doesn't get the notice of deficiency and so misses the opportunity to bring an action through the deficiency proceedings, which is why Congress provided in this particular provision that if you don't get a notice of deficiency, you can challenge the underlying tax. What about paying and suing for a refund? Is that always available? Yeah, and so yes and no. I mean, it's available to the extent you have the ability to pay in full and seek a refund, but it doesn't really redress the harm that Congress was getting at here because it's not, you know, some people challenge the underlying tax, but the majority of people are really asking for collection alternatives. They're saying there's a hardship. There's a reason why you shouldn't levy on this particular piece of property, and a refund action after the fact, once the levy's already occurred, is not going to solve for any of those harms, which is what Congress was really trying to get at here. And so, you know, I think if you're looking at what Congress was intending to do, it's just implausible to think that the same Congress that put this into a taxpayer bill of rights to protect taxpayers was sort of simultaneously deciding that this is the case where we should have a harsh, you know, Well, Congress did put an exception in for bankruptcy, right? It did. Later on. Yeah, so it put it in in 2015. But, you know, the same was true in Holland. In Holland, in the habeas case, there was an argument made that there was statutory tolling for when a state post-conviction review proceeding was pending, and the court said, well, that's easily explained. You can't be in state court and federal court at the same time, and a year can come and go before you have an opportunity to get into federal court. I think it's the exact same rationale when it comes to the bankruptcy exception. You can't file a petition while you are in bankruptcy, and the 30 days is going to very quickly come and go before you have an opportunity to get into federal court. I mean, I think as far as exceptions more generally, again, we pointed this out in the reply brief, you know, it feels like the commissioners may be trying to have the best of both worlds. You argue if there's no exceptions at all, then Congress really meant it. It's meant to be this harsh jurisdictional deadline. But if you have exceptions, it means that maybe Congress already spoke to it, and the court shouldn't add additional exceptions in equity. And I think the difficult part of that. Sherry, if I might, speaking of equity, you argue in the second part of your argument about the necessity for equitable tolling here, how it's appropriate. And I understand your points about the statutory language. But we normally think of equitable tolling, I thought, as a traditional common law rule that we don't assume Congress displaces lightly. It legislates against the backdrop of the common law. But here we don't have a court of law. The tax court, you can call it an Article I court. One might call it an Article II agency. But whatever it is, it's not an Article III court. So to what extent does that presumption about the common law and rules applicable to courts transfer over? Or do we even need to decide that question? I mean, I think it does transfer over, and let me try to answer it in a couple of different ways. The Veterans Court is also an Article I court. And this court in Henderson didn't reach the equitable tolling question. The whole Article I court thing is kind of funny, isn't it, right? And I don't think I need to go down that road too far here. But, you know, it is an Article I court, and the court in Henderson I'll spot you that. The court in Henderson didn't decide it. But the Veterans Court has been applying equitable tolling both before the Federal Circuit's decision in Henderson and after that. But this court's also applied the presumption outside of the sort of strict Article III context. And let me just point to two examples. I mean, one is Young involving the bankruptcy court. But the other is June. So June was the companion case to Wong, and it involved the administrative deadline for an FTCA claim. Wong involved the judicial one. Well, the bankruptcy one, I mean, they're adjuncts, right, to Article III. And, you know, at least they're somewhere knocking around, you know, one could say. Here there's a lot less relationship to Article III. But fine. Can you just address? I got your point. It's a good one. The second part of that question is do we need to address whether equitable tolling exists, or do we need to merely allow for that possibility for the tax court to resolve that question? Yeah, and so, you know, certainly the court can decide it's not jurisdictional and send it back. We think it does make sense for the court to decide both questions. I think there's a lot of uncertainty on this front, and other taxpayers. Ms. Castillo has a case in the Second Circuit raising this question, and so I think it would be helpful to resolve it since it's been fully briefed here. And just one more point, you know, to add to the distinction between the two. I mean, in this court's decision in Freytag, it said that the tax court is just like a district court in terms of judicial power. And if you look, you know, at things like the standard overview that's provided by statute, it says treat it just like a district court. And so the tax court has exercised equitable powers in other areas, whether it's waiver or estoppel or reformation, and that's the Pollack decision we cite. So let me see if I've got the argument. I'm sorry to interrupt, but the Congress has decided that we should treat it like a court, even if it isn't a court, and therefore we should continue to do so here. I mean, I think that is true. I mean, again, whether that stretches the bounds of Article I and how you define that, I don't think it's something the court has to address here. But I think for purposes of equitable tolling, there's no basis to distinguish the two. And, again, just to go back to the original enactment when it was both the district court and the tax court, it would be a little strange to say that the district court can equitably toll, but the tax court can. They basically had concurrent jurisdiction. The only difference was the underlying type of tax at issue. Very helpful. Thank you. Let me take you back to the jurisdictional question and just ask, what would it take to convert this into a jurisdictional provision? So the short answer is if you look at 6015, which is the innocent spouse provision, it was enacted the very same legislation as this provision, and it has conditional language. And so it's on page 1A of our blue brief, and it essentially says, you know, it has a similar parenthetical, but it says if it was filed within 90 days. And so I think the easiest way to do it, I'm not saying it's the only way, but I think the easiest way to do it is to actually include conditional language. Right. I guess what I was sort of driving at is, you know, we've always said that there are no magic words. So how do we draw that line? Like, how can we insist that there are no magic words and yet insist that there be conditional language of some kind? So I don't think it has to be conditional. I think that's the easiest way. I could give you a couple other ways I think Congress could do it. Usually when Congress is talking about jurisdiction, it starts by talking about the court. And so if you look at jurisdictional provisions, they tend to start with the court, you know, shall have jurisdiction of or over and then fill in the blank. And so here, if it started by saying the tax court shall have jurisdiction over petitions for review filed within 30 days, I think it would be, you know, we would have a much harder argument to make. I think there are other circumstances, too. You know, I don't think a cross-reference is the best way to go about it, certainly not a parenthetical one. But if Congress wanted to do that, use a different phrase besides such matter. Say such period. Include, you know, the time limit within that. So I think there are a variety of different ways that Congress could have spoken more clearly. I think the reason Congress didn't do so here is because it's not at all what Congress intended in this particular review scheme to have it be that rare deadline. But you're asking an awful lot of Congress when you say that basically the tax court shall have jurisdiction if it's at the first part of the sentence rather than in a parenthetical. It makes all the difference. And, you know, such matter, yes, it is not the clearest thing. Maybe it refers to such determination. Maybe it refers to the whole thing, the petition. They'll file a petition in 30 days. That's the matter. And if that's the matter, then you lose, right? Because it's the petition that's filed within 30 days that it has jurisdiction over. So I don't think we lose on that. But you started by saying it's a lot to ask of Congress. I think that is the point of the clear statement. Well, it does ask a lot of Congress, but on purpose because it's something you want Congress to focus on and affirmatively decide. And so, you know, in other contexts when you're dealing with – but usually court shall have jurisdiction seems to me to be a pretty significant piece of evidence on the question of whether or not this is jurisdictional. And a lot of your argument is sort of, you know, well, but that's in a parenthetical. Well, but it comes in the middle of the sentence. And I don't know that that's enough to say that you haven't made a clear statement when the statement is the tax court shall have jurisdiction. And so let me, you know, respond in two ways. One is I think, you know, when the court applies a clear statement rule, and I'm now going outside of the context of the long line of jurisdictional and equitable tolling cases. But if you look, for example, at the decision in FAA v. Cooper, it's in the context of waiving a state's sovereign immunity. The court has said, you know, if there's multiple plausible interpretations, we're going to go with the one there that didn't waive the state's sovereign immunity. And the majority there said, you know, the dissent has an interpretation that seems plausible. It's just not required. And I think the same is the case here. Now, to be clear, we think we have the better reading of the provision. And I think that's in part because of this court's case law where there is a difference between a time limit and subject matter. And if you look back again at the original enactment, I think it's really clear why it's talking about jurisdiction. It's not to say that the time limit is jurisdictional. It's to say that the subject matter, this new CDP petition that did not exist before, that the tax court has jurisdiction to adjudicate that particular kind of petition. And that is normally how jurisdictional statutes are written. And so, you know, there's no question Congress can make a time limit jurisdictional. But if it wants to do so, it has to speak clearly. That's 6015E1A on page 1A of the blue brief you cited. I mean, that's not crystal clear either. I mean, I don't dispute that, but at least it has conditional language, which gets a lot closer to saying that the time limit is conditional. I mean, it still has the difficulty of having it in a parenthetical and it's a long, winding, you know, sentence. But it is conditional. And there's another provision. It's the interest abatement provision. It's 6404. It's one that this court talked about in the Hanks decision. That one has similar conditional language in that it says, you know, if it's filed, I think there it's within 180 days. And so, you know, that is a much closer case where it's conditional. Here it doesn't have conditional language. It still has it in a parenthetical. The phrase is such matter. It's not normally what you think matter means. And we know the same language was in the original enactment. And it didn't mean it was jurisdictional there. And nothing, you know, relevant with respect to that language has changed in the ensuing years. Go ahead. Go ahead. It's pretty artificial to think that Congress actually intended anything on these issues, assuming that it can intend anything. So what we're left with is the language. And maybe what we can infer from the nature of these proceedings that may or may not be subject to, on the one hand, a clear but harsh rule, and on the other hand, a more flexible rule that may lead to a lot of proceedings as to whether there was an equitable ground for totaling the statute of limitations. So what can you tell us about the nature of the proceeding and what might be inferred from it with respect to that issue? Absolutely. And may I answer? Certainly. So the nature of the proceeding, I think, helps us a lot. I mean, in Henderson, the court said that that was a very telling indication there. We think it's similarly telling here. The CDP proceeding is infused with equity at every turn. Number one, the reason it exists is because Congress wanted to put a court between the IRS and levy and give taxpayer protections. But number two, the substance of the proceeding is about collection alternatives, whether an offer in compromise should be accepted. And one of the reasons you would accept an offer in compromise is if public policy and equity suggest that that is the best option. Congress imposed a balancing test to balance the interest in tax collection on the one hand with the interest of the individual taxpayer on the other in having that collection occur in as least intrusive a form as possible. The innocent spouse defense is one of the things that can be raised in the context of a collection due process proceeding. That's equitable in nature, too. And so if we're looking at the nature of the CDP regime, it's equitable at every turn, and it's an additional reason why, you know, to the extent the court thinks that Congress didn't think about it, it is, again, I think, pretty implausible to think that this Congress who enacted this regime would have wanted it to be the harsh deadline. Justice Thomas, anything further? Justice Breyer? Justice Sotomayor, anything further? No, thank you. Justice Kagan? Justice Gorsuch? Justice Kavanaugh? Yeah, I have one additional question. The government makes the argument that if equitable tolling is available, it should only be in extraordinary circumstances and wants to make sure that it's pretty tightly cabined. I just wanted to get your response of how you would say equitable tolling should apply, when it should be available. Anything you want to say on that? Yeah, I mean, we don't dispute that. We think the standard for equitable tolling has been well-established for some time. The Court has cases, you know, fairly recent cases saying what that two-part standard is, and we think the standard should be exactly the same here as it is in other cases. Thank you. Justice Barrett? Thank you, Counsel. Mr. Bond? Mr. Chief Justice, and may it please the Court. Section 6330d1 contains what most statutory deadlines lack, text that expressly addresses the Court's jurisdiction and ties it to the time limit for seeking review. The second clause states the tax court shall have jurisdiction with respect to such matter. Petitioner agrees that such matter refers to the petition described in the first clause, which permits a person within 30 days to petition for review of a collection due process determination, and it is common ground that the tax court's jurisdiction is contingent on the filing of a petition described in the first clause. The narrow dispute is whether such matter refers to a petition that meets both of the first clause's requirements or selectively incorporates just one. The clear meaning of the text in context is that such matter refers to a petition that satisfies both. The first clause describes a single act, filing a petition that meets two criteria, and the time limit is embedded in the verb phrase. That is confirmed by paragraph E1 at page 14A of our appendix, which undisputedly makes the tax court's jurisdiction to grant an injunction contingent on a timely petition. Petitioner cannot explain why Congress would make a timely petition a jurisdictional prerequisite to that remedy, but not to the court's authority to decide the case. The interlocking statutory structure and nearly a century of decisions addressing analogous tax court provisions reinforce that understanding. Petitioner's argument at bottom is that various non-jurisdictional readings can be posited, but none of them clouds the clear statement that Congress provided, because none is ultimately tenable after all the interpretive tools are applied. But at a minimum, the deadline is mandatory, not subject to ad hoc exceptions. If there are to be exceptions, they must come from Congress, which not only can strike a context-specific balance, as it has in other areas of the Code, but also can address unintended spillover effects in a way that courts cannot. I welcome the Court's questions. Mr. Bond, under current practices, are these time limits ever tolled for any reason? Yes. There are statutory grounds for tolling that apply that are different fundamentally from equitable tolling. And if I could address those specifically, there's one in this provision itself, 6330d-2, for cases of bankruptcy. There are also general statutory tolling provisions that apply to this and many other provisions in the Code for cases where a person is in a combat zone or a disaster area. What's fundamentally different about each of those areas is that the information the IRS needs to know in order to determine whether it can proceed with collection is in its possession and is automatically processed by its system. The IRS gets monthly data from the Department of Defense on whether someone is in a combat zone.  And the IRS is served with a bankruptcy petition and knows whether to put a freeze code on that person's account. Equitable tolling is fundamentally different. And the open-ended exception that I think Petitioner is proposing would not be workable for the IRS, because when the IRS issues these 26,000-plus collection due process determinations, it would have no way of knowing whether a particular taxpayer who doesn't pay or doesn't file their petition on time is subject to an equitable circumstance or an extraordinary circumstance that stands in their way. Do they get monthly reports from the Department of Defense over who's in a combat zone? They receive monthly data from the Department of Defense that flows into the IRS's data system. That's correct. Well, like, how do they even know that, I mean, when do they find out? I mean, nobody knows if they're going to file a claim for something until they file a claim. I mean, I'm just, there are a lot of people, and the Department of Defense, I've just, I'm struck by the difficulty that that presents and want to make sure I understand what's involved. Sure. As we understand it, the Department of Defense provides this data that goes into the IRS's system addressing taxpayers generally, not just those people. Taxpayers generally, like every taxpayer in the country?  So there's somewhere in there something that says, you know, Fred Smith, not in combat zone. And we don't even know if Fred Smith's going to file something in the tax court or not. Do you cross-reference it when the list comes in? Yes, this is processed by the IRS's computers, and that's because this doesn't just affect collection due process, but a number of other deadlines and provisions. Yeah, I know, but my point is that your name is there even though you've got nothing to do with, there's no reason the IRS should worry about you? Well, if you're a taxpayer. It's not all persons generally, but all taxpayers. Wow. Okay. And so, too, with disaster relief, that's not by name but by zip code. And for bankruptcy, you receive the petition. So these exceptions that Congress have created fit with the system that Congress... Mr. Bond, can I ask you what your response would be to Ms. Sherry's point that this process is equitable at every turn? I mean, you make some strong arguments, but Ms. Sherry points out that the nature of these CDB proceedings might reflect, as Justice Alito said, what is more consistent with the plan to permit equity. So CDB proceedings are not equitable in the sense of trying to achieve global fairness in the face of the Code's requirements. They are instead an accommodation of specific interests, including intrusion into the taxpayer's affairs and their ability to pay that Congress provided, on top of all of the other mechanisms of review. It's important to understand this additional layer against that backdrop. The default mechanism for seeking review is a refund suit, and this Court has On top of that, for many taxes, not this particular one but income, estate, and gift taxes, there is deficiency review before assessment occurs. Congress added this procedure as an additional last clear chance when the IRS is on the brink of collection to address the collection steps themselves. And it's only in cases where there wasn't a prior deficiency opportunity to challenge the underlying liability that the merits even come into the picture. On the steps. Keep going. So it is an accommodation of those additional interests, but it's a measured and balanced one that's designed to be a brief pause, not to upend the collect first and litigate later approach of the tax code. On the statutory language, the fact that, as you say, there's a narrow dispute and there's reasonable arguments both ways about how to read the parenthetical, doesn't that, under our precedents going back 20 years or so now, kind of end the case because there has to be a clear statement, we have said, and we've been increasingly strict about that, and the fact that there's a reasonable debate about how to read the parenthetical, you can read it one way, you can read it the other, doesn't that just end it? No, Your Honor, because here Congress has provided the kind of clear statement that this Court has said is most important. The provision speaks to the Court's power. The jurisdictional limitation is linked back to that first clause. I don't think the clear statement rule requires the clearest possible statement that each criterion is independently tied to jurisdiction. But it's in the same sentence, and that helps you, no doubt, but it's still, I think, debatable which part of the sentence preceding the parenthetical it applies to, right? I don't think it is for two reasons. You don't think it's debatable? First, just focusing on that clause, I don't think the last antecedent rule or principles like that help Petitioner because the first clause describes one thing, one act, filing a petition that meets two requirements. You can't use the last antecedent rule, as Petitioner does, to pick up just the last half of the first clause because that last half describes a condition on a petition. You can't grant jurisdiction over a condition. You grant jurisdiction over the matter, and as Petitioner acknowledges, that's best read to mean the petition. But even if you look beyond D1, I think paragraph E1 is dispositive because Congress there, as it has. I'm sorry. Go ahead, please. There, as it has done in other provisions, has made clear that the tax court's decision to grant an injunction is dependent on a timely petition. And on the point of timely, it's not correct that in the context of equitable tolling, an action that is done untimely but is told is therefore deemed to be timely. There are two reasons for that I would give. First, look at the Court's decision in Irwin, Petitioner's leading tolling case. At page 92, the Court holds that the complaint is untimely. And then it goes on at page 93 to address the argument that even if it was not timely, it should be excused on equitable tolling grounds. And the second reason is that E1, as everyone acknowledges, is jurisdictional. It makes a timely petition a jurisdictional prerequisite. That's the last place you would expect to see Congress using the word timely as imprecision. Breyer, I mean, as well as the obvious thing, just in English.  But just in ordinary English, it says, here's such matter. Okay? That could refer to the appeal of such determination. Or it could refer to the appeal of such determination filed within 30 days. Okay? Now, I think that was Justice Kavanaugh's point. And it got me why it couldn't refer to either. And then if you go back to E, it does say timely. But, I mean, you go back to Black's Law Dictionary. I don't know. Maybe you go back to Justinian. And it says what tolling does is it stops the clock. Okay? It stops the clock. So if you do have tolling and you stop the clock for three days because the person involved was very ill or his family was or something, and best reason in the world he couldn't get to the post office, it was black ice everywhere. I don't know. But then it stopped three days later. Okay. Then it was timely when he got around to filing it. And they excused it. I mean, can't it be read that way? I mean, I guess everybody's asking the same question, just emphasizing can't. So I don't think timely in E1 can mean that. Why? Again, because, again, for two reasons. First, that's not how this, that's the opposite of how this Court has described the effect of tolling in the equitable tolling context on which Petitioner relies. And in this particular provision where Congress is saying a timely petition is a jurisdictional prerequisite, it's passing strange for Congress to say timely when they, if what they meant was timely only by operation of equitable doctrines that do not apply to jurisdictional prerequisites. So I think that argument just doesn't hold. The law dictionary says equitable tolling is a court's discretionary extension of a legal deadline. So they extended the legal deadline. Therefore, it is timely. The practical effect of equitable tolling is to give someone the benefit of that. But I think the Court has distinguished equitable tolling from statutory tolling in cases like CalPERS v. ANZ, where it says equitable tolling isn't interpreting the statute to say it is extended for this period. My only other question is what terrible thing will happen if, in fact, we say, okay, yeah, you can have equitable tolling. I mean, there are other provisions that say you can't file a petition that's going to interfere with the levying. There's another provision that says it can't be frivolous. So we have those two in operation. So what awful thing will happen? So I would point you to two things, one specific to this context and more a broader concern of spillover effects in the Code. The specific consequence here is that if tolling is available, then when the 30-day deadline to petition runs in the 26,000 cases where the IRS issues these determinations, it then will be in a state of uncertainty about what, if anything, it can do to collect, because it will know that a taxpayer may file a late petition, assert tolling, and months or years later a court will conclude that tolling was, in fact, available. And I think that puts the IRS in an impossible position. More broadly, I would point the Court to spillover effects of interlocking relationships in the Code. The Ninth Circuit in the organic cannabis case pointed to an illustration of this if you applied Petitioner's approach to section 6213A, governing deficiency. And that's 95 percent of the Court's docket. And they explained that if you apply equitable tolling there because of the interrelationships of the Code, you'll end up harming taxpayers by precluding them from seeking or from bringing refund suits. The taxpayer advocate has acknowledged that. And it has to be done. Breyer. So don't do it there. Equitable means equitable. So if it's going to hurt everybody, don't do it. And I don't think Petitioner has offered a theory that wouldn't, on their view, extend to that other circumstance. But the point where I'm trying to make is that adjusting one provision in the Code has spillover effects in others. And it's the kind of thing that Congress can address by looking at, in this context, what would happen to E1 and the suspension periods if the deadline is not jurisdictional and subject to tolling? Congress could decide what circumstances warrant tolling. Maybe there should be an outer limit on how much tolling is available or what notice must be provided to the IRS that a person is under such a circumstance and needs additional time. Congress can make all of those kinds of judgments. But this Court, in deciding the binary question, whether it is jurisdictional and if not jurisdictional, whether traditional tolling applies, can't make those kinds of comprehensive judgments across the statute. The other thing I would point you to, Justice Breyer, is in terms of what Congress actually understood at the time it enacted this. 6213, the model for all of these provisions, had been held at that point by every circuit in a wall of precedent to be jurisdictional for 70 years. Congress, in this provision, added even more emphatic language, this jurisdictional parenthetical. So in terms of expectations of Congress or how Congress anticipated this and other jurisdictions, Congress sensibly understood that it would operate in the same way and it would upset those expectations to say, well, no, we need conditional language or we need the word jurisdiction to appear earlier in the sentence. That is a magic words requirement. That is a clearest possible statement standard, which is not what this Court's case is, Justice Breyer. Alito, please. Suppose that D1 were worded just slightly differently, and this is not the kind of language you usually see in a statute, but indulge the hypothetical. So suppose it said the person may within 30 days of a determination under this section petition the tax court for review of such determination, and by the way, the tax court shall have jurisdiction with respect to such matter. What would you say then? I think the outcome would be the same in that circumstance, both under the language of this provision and especially with E1 in the backdrop. Really? Because when you say, and by the way, that signals you're switching to a different subject. I don't think you're breaking the link between the 30-day filing requirement and what you're going to say later about jurisdiction, aren't you? I think it's a closer case, but I think you would still need to figure out what the antecedent is. And such matter refers to the product of the process described in that first clause. And even in that variation, I still think it refers to a process of filing a petition, the product of which is a petition that satisfies those criteria. All right. Well, maybe that's the case. The reason I ask the question is I think that's what you normally take, make out of a parenthetical. You're switching to something else. It's an aside. It's something different from what you've just said. I don't think it's an aside here. I think the parenthetical shows you that it's clearly related to and even more clearly linked to the first clause. It's more closely connected than if the second clause that's currently in parentheses with the conjunction were in a separate provision and all we had were such matter and E1. I think that would be a closer case than what you have here. Here, I think it's clear from the placement of this parenthetical along with the such matter reference back to the first clause that all agree refers to the first clause petition that Congress is modifying or is clarifying the scope of the tax court's jurisdiction. Recall that the tax court is one of very specified jurisdiction. There's not a 1331 equivalent. It only has the jurisdiction that Congress has expressly conferred. I think the odd thing on Petitioner's view is that Petitioner can't explain why this parenthetical is there at all because the statement that a person may petition the tax court for review of such determination would necessarily signal that the tax court can decide it. I think the point of the parenthetical is to make emphatic that the court's jurisdiction is limited to petitions that are authorized in the first clause. Mr. Bond, on that score, just to follow up on Justice Alito, such matter could, it seems to me, refer to, talking about last antecedents, at least three things here. One, it could refer to a determination under this section, in which case, as Justice Sotomayor suggested, you might face difficulty because there's been a determination under this section. So that confronts the government with problems. Number one. Number two, it could be a petition, as your colleague on the other side argues, Ms. Sherry, without respect to time, in which case that would also present the government with problems. Or, number three, it could be the petition taking cognizance of the time, which is the government's position. So acknowledging that there are at least three possibilities here and only one of which obviously helps the government, what am I supposed to do? So I think you have to look carefully at each of those possibilities because, as the Court says time and again, ambiguity is not a function of – But do you agree with me those are the three possibilities and two of them are rather difficult for the government? There are three things that have been positive, but if I could explain why the first two aren't tenable when you look at the statutory – Of course you may, but before you do – Yes, that's the universe of arguments that have been advanced. That's the universe and two of them are challenging for the government. They would be if they could be squared with this text and context, but they cannot. All right, okay, now you can go ahead. Sure. All right. I think with respect to determination, that's not a plausible reading in this context, not only because of E1 in the backdrop, but just on the word determination, that word appears a dozen times in this provision and Congress conspicuously switched to matter in this parenthetical. If Congress meant determination, that would have been the easiest way for it to say so. Petitioner cannot explain that switch. It's true that Congress sometimes uses synonyms, but there needs to be a reason to conclude that Congress did that here. And there's no basis in the statute or in its history to conclude that Congress used that imprecise language. Well, I look forward to hearing Ms. Sherry's thought on that one. Sure. And on the second possibility, that it refers only to a petition of a particular kind, I don't think there's a textual basis for disaggregating the requirements that are in that first clause, particularly when the time limit is embedded in the verb phrase. It's may within 30 days of such determination petition. I think Congress is signaling that time is of the essence, that time is part and parcel to this avenue of review that's meant to be a limited pause and is consistent with the way the model for these provisions had been understood by lower courts for 70 years. Mr. Bond, can I ask you, so Justice Gorsuch has just identified the universe of possible interpretations. Let's say that I think the government's interpretation is maybe a little bit more plausible, but not a slam dunk. In light of the backdrop of the clear statement rule, what am I supposed to do with that? I mean, how clear does it have to be? I think once you've exhausted the interpretive tools, you have to conclude whether that other interpretation is actually tenable. And so it's not a clearest possible statement. It just has to be that after you've looked at all of the context, you conclude that that alternative interpretation. But that sounds like you're saying what we do in ordinary interpretation, which is just conclude what the most plausible interpretation of the ordinary language would be. But a clear statement rule requires a little bit more than that, doesn't it? Well, I think as this Court has described the clear statement rule, its goal is to approximate Congress's likely intent in the setting, as I think the Court said in Henderson. The clear statement rule is justifiable if it's gauging what Congress would have intended in this setting, not if it's imposing drafting rules on Congress. And so if you look at the text and the context and the history and conclude that in fact Petitioner's reading at the end of the day can't be reconciled with all of those things, then the statute is clear in making it jurisdictional. It's only ambiguous if after exhausting everything, you don't have an answer. So you think that the rule kicks in only in the case of ambiguity? That's right. Because if it's unambiguous, then it's necessarily a clear statement that something is jurisdictional. And here Congress has provided the kind of clear statement this Court has called for by addressing the Court's jurisdiction in the same provision, referring back to the time limit, and then adding in the year 2000 the E1 language that appears elsewhere in the code that says the tax court's jurisdiction to grant a remedy that's necessary to prevent mootness in some circumstances is contingent on a timely petition. And I don't think Petitioner can explain why Congress would do that if timely means, as we say, one that actually satisfies the timeline in the statute. Mr. Bond, my law clerk tried to explain my simple thinking when I was reading this provision, and I'm not sure I fully understand her response, and perhaps you can explain it to me. If your reading is that the deed provision provides the court with a jurisdictional time limit, that means, in my mind, that the tax court has no jurisdiction to do anything unless the petition is filed on time. Correct? That's right. So why do you need E1 at all? Because of the sentence before the one we've been talking about in E1 that was added at the same time as the final sentence, which granted the tax court and another proper court, the proper court or the tax court, jurisdiction to enjoin levy activities notwithstanding the injunction act. So as we understand the final sentence, it's clarifying that this is not a freestanding grant of authority to the tax court to enjoin levy activities outside of cases in which it has jurisdiction because there's a timely petition. Now, without that final sentence, I think, as you suggest, we would still say the tax court doesn't have injunctive authority. That would be the better reading. But Congress left nothing to chance here, given its concern with having a judicial inclusion into collection. So under normal circumstances, you would say, we don't really need E1? Under normal circumstances, we would say, in our view, it's not strictly necessary, but it's there, and it serves the function of removing any doubt about the tax court's jurisdiction. But wouldn't that add to your adversary's position that there is enough ambiguity, given that it is, even by your definition, a belts and suspenders provision? Oh, I don't think it helps Petitioner at all. I think quite the opposite, the fact that Congress went further than arguably necessary to make clear that the tax court's jurisdiction over this remedy is contingent on a timely petition. I think that belts and suspenders approach points strongly in our direction. And I would add as well that this same kind of language occurs in 6015E, which Petitioner was discussing earlier. In particular, it appears at page 2A of our appendix in a provision that I understand Petitioner to agree is jurisdictional. We have the same language there about the tax court shall have no jurisdiction absent a timely petition. And there it performs the same function of avoiding any doubt about the tax court's injunctive authority. And if the tax court can't enjoin collection actions that violate the suspension period, there's no reason to think that Congress intended to have authority to adjudicate the underlying collection due process proceeding. Thank you, counsel. Mr. Bohn, this may be an out-of-left-field question, but how should I think about this clear statement rule? How should I think about applying it in this case or more generally? If I have more than a suspicion that Congress has no idea what we're talking about in this area, that we keep on saying these words and presuming that Congress understands them, and I don't see any evidence that Congress really does. And if I think that's so, I mean, I guess you can argue with me because you've talked a lot about Congress signaling this and Congress saying that. But, I mean, my gut is that Congress has never read any of our cases in this area. What should I do then? I think you should resist a version of a clear statement rule that requires particular phrasing or adds new bells and whistles to the court's past cases and treats it as simply and directly as possible. It's simply a tiebreaker rule to say whether Congress has made a requirement jurisdictional or not. And I think the insight underlying the clear statement rule is that because of the consequences, we don't think Congress does this inadvertently. But there's nothing inadvertent about Congress's approach to jurisdiction in this statute or in the tax court context. But I think Justice Kagan's question is more general. You know, there have been efforts from time to time in the lower Federal courts to send opinions to Congress. There is a drafting section in both houses. Does the Solicitor General's office ever get together with them and say, look, here are some general statements in these opinions. We're just calling them to your attention. Kagan. Gosh, you could wipe out half of our docket. Well, that's a good question. But, I mean, as a separation of powers between the executive branch and Congress. They're always sending stuff to Congress. So I can't speak to any specific dialogue on that kind of drafting issue or on the lower court's opinions. I take the point that Congress may not be paying as close attention to the court's opinions about which specific features of statutes have jurisdictional significance. And that's all the more reason not to ratchet up the requirements. Well, so you could help there. You could help. The SG's office, I mean. And we will take that to heart. But I think as the Court decides the case in front of you, I think the answer is not to say, well, Congress used the word jurisdictional, but it didn't use if or where. Or it didn't put jurisdiction in the right place in the sentence. Or it used parentheses instead of a semicolon. I think that does a disservice to Congress and becomes a drafting instruction to the legislature instead of approximating what Congress would have had in mind. But the point of a clear statement rule to pick up on Justice Kagan's question is when legislation is drafted, first of all, there are expert drafters who are involved in the process and who do know some of the background principles. Usually on something affecting the IRS or Treasury people would be up there in the room going through the language, and they presumably are aware of the Court's jurisprudence. And therefore, maybe not all of Congress or even many of Congress, but the people typing it into the computer and the people in the room negotiating the language are often aware of the background principles. And therefore, we should require a clearer statement than what we have here. The last part of this you're not going to like, because they are aware of the clear statement rule that the Court's put forth over the last couple decades. So I think if the Court stands in the shoes of Congress in enacting this in 1998 originally and in 2006, and it took substantially its current form, or the mind of experts who are focused on the issue, you'd come to the same conclusion. In 1998, it was clear that the statutes like this on which this were modeled were jurisdictional. Congress had no reason to think that by enacting a substantially similar provision with even more explicit jurisdictional language would not achieve jurisdictional effect. And in 2006, and this is after Arbaugh, when Congress enacted it into its current form and got rid of district court review, it removed the one structural feature that Petitioner says historically led to a different interpretation. Well, to pick up on Justice Kagan's question some more, because I think it is an important point in the separation of powers point, Treasury is constantly going to Congress and saying we have a problem with this, that, and the other thing, right, in the legislative, in the statutes, right, and to fix this and fix that. And one of the things presumably Treasury could emphasize is we need to be clear about the importance of these deadlines. We need to be clear about the word jurisdiction. That's very, wouldn't be the SG's office, but Treasury-led affairs would be up there all the time. Certainly would be open if the court rules that way for Treasury to do that. But I think against the backdrop of decades of decisions of lower courts consistently treating this and other deadlines as jurisdictional, I think it's inappropriate for the court to assume that if we rule against the direction of our precedents, it's fine because the executive branch can go to Congress and see the different dispensation. This has been a process over a bunch of cases, but has established a clear baseline instead of muddling through. And now everyone, the ledge affairs offices, the IRS and Treasury, know what the situation is. And when they're discussing legislative needs with Congress, which they do all the time, with ways and means staff or whatever, they can emphasize we need to be clear about the word jurisdiction with these time limits because that's the rule now. We can't just assume anything. Now, I realize there's a transition period, but I don't see why that's so hard. I think the difficulty, as the argument this morning has illustrated, is it's not even clear to me now what Petitioner thinks would be sufficient and what those in Congress or Treasury could conclude. The tax court shall have jurisdiction only if it's filed within 30 days. That would be sufficient. That's even beyond what Petitioner has suggested. I agree, but that would be sufficient. And that turns into a clearest possible statement rule, which I don't think accords with the justification for the clear statement rule of ARBA, which is trying to capture Congress's likely intent. And it is out of step with, I think, the comment earlier that Congress may not be aware of all of these decisions, and we're simply requiring the clearest possible statement, even though Congress may not know in every single context exactly what that phrase should be. And there are settings where different – oh, I'm sorry. You can finish your sentence. There are settings where different language may be appropriate for specific context-specific reasons that Congress may not appreciate without guidance from this Court. Thank you. Justice Thomas. One small question. Mr. Bond, you mentioned several times that this would have significant effect, a spillover effect to other provisions if we rule against you. But with that aside, how many appeals are we talking about, these collection due process appeals are we talking about? So the universe of cases in which a person could petition is on average 26,000 or so a year. Now, how many are there? Yes, so – How many actual appeals are there? Appeals that are taken, I think, is around 1,100 a year. And how much – if we rule against you, how will that number change? Not the universe, but those numbers, the 1,100. So of the 1,100 or 1,200 petitions that are filed each year, roughly 22% or so, around 300 of them are dismissed for lack of jurisdiction. So that universe of cases would be affected by petitioners – that's a five-year average – would be affected by petitioners' rule that tolling is available in those cases. The broader point I only meant to make is that petitioners' rule about equitable tolling affects the IRS's collection efforts in every case where a petition could be filed. That's why the 26,000 is in the picture. Thank you. Justice Breyer? Justice Sotomayor? No, thank you. Justice Kagan? I have two more questions. One, I am concerned about what you said about the implications for 6213A. 6213A, I'm sorry. But I thought the language in there was clear in tying it to jurisdiction, so I'm not sure a holding that you lose here would affect 6213. We agree that 6213A should stand as it is, and the courts have understood it that way for a long time. All I'm saying is that when Congress enacted 6330D1 in 1998, it added on top of what 6213 had. I got that point, but you're not worried – or correct me if I'm wrong, because I'd like to know this – if we rule against you here, you still have a good argument that 6213A is jurisdictional. Yes. Correct? Yes. Okay. And then the second argument, picking up on Justice Barrett's question, I struggle with the question she asked too, how clear is clear. I thought you were saying to satisfy the clear statement rule, so long as the word jurisdiction has been used, then you go to the best reading. Is that not what you're saying? Maybe that's not what you're saying. So I guess I'm saying two things. When we're trying to determine whether the – In other words, the clear statement requires using the word jurisdiction. Once you've used that, then just – you've cleared that hurdle, and then you go to the best reading. Maybe I'm wrong. I think there are two separate things going on. One is when we're trying to figure out whether a particular requirement is jurisdictional in a statute that expressly addresses jurisdiction, I don't think we continue to apply the clear statement rule at every single requirement. That's what I thought. Yeah, that's right. But I think the thing I was saying in response to Justice Barrett is how do we know whether something is clear? And I think it's like any other context, like in Chevron or something else, where we apply all the interpretive tools before we conclude it's ambiguous or not. Thank you. Justice Barrett? No. Thank you, counsel. Rebuttal, Ms. Sherry? Thank you. Let me try to make three points. First, with respect to the clear statement rule, I think the commissioner's view of the clear statement rule is inconsistent with how this Court applies it in other contexts, and it would undermine it in other contexts. FAA v. Cooper says, number one, to the point that was just made, it's not that you just apply it at the threshold, whether there's a waiver of sovereign immunity. You apply it to actually decide the scope question, and that's really what we're talking about here. It's a jurisdiction-conferring provision. What is the scope of that jurisdiction? It's the exact same question the Court was asking in FAA v. Cooper, and it has to apply in the same way. As far as whether Congress is thinking about this and we don't know what Congress's preference is, we think that means that we have to win on this, because as the Court said in Henderson, this Court has a preference to treat time limits like claim processing rules. If Congress has a different preference and actually thinks about it, then Congress has to speak clearly, and it hasn't done so here. As far as E1 goes, a few points on that. Number one, it is very much the tail wagging the dog. We think timely absolutely has the interpretation we give it, which is it includes equitable tolling. Look no further than this Court's decision in Ardis, which said that tolling is pausing, it's stopping the clock. Even the dissent that disagreed with that with respect to that statute said in footnote 10, that is how we understand equitable tolling. So we think that answers it and there's no incongruity at all. But the other thing I think is worth looking at is the first sentence in E1. That's the one that tells the IRS that it can't collect, and that is not tied at all to whether or not a petition is timely. As soon as any petition is filed, there's an appeal pending, then the IRS cannot levy during that period of time. And then, Justice Sotomayor, to your point, does that mean that the final sentence means nothing? The final sentence is there to say that a taxpayer can't go to the tax court and has to go to another court before there's an appeal in the tax court. And so to the extent the IRS levies while a CDP hearing is happening before the Office of Appeals, that taxpayer has to go to the district court. So the final sentence understood our way makes complete sense. What Congress was saying is that when you have an appeal that the tax court is actually going to adjudicate on the merits, you can go to tax court. Otherwise, you have other courts that are available to you. As far as administrability goes, the idea that this certainty exists in the real world I think is more of a myth than anything. I heard for the first time that there is a list of combat zones and that they know what every taxpayer is doing. I think that narrows those exceptions. I mean, it's not just those who are serving in combat zones. It's a person affected by a terrorist action, covers a relief worker assisting a disaster area. The list goes on and on. And it's not just those exceptions. There's a mailbox rule. There's other instances in which the 30 days are going to come and go, and the IRS is not going to know whether a petition may ultimately be accepted as timely. And administrability concerns more generally to the number of cases. This looks nothing like the refund actions that were at issue in Brokamp where there were 90 million refunds that the IRS had to deal with. There are about 1,200 cases that are petitioned to the tax court. And I know they said, I forgot what the number was, but however many are dismissed right now for lack of jurisdiction, that's not just because they weren't filed within 30 days. There's a number of other reasons why those cases are dismissed for lack of jurisdiction. And before the 8th Circuit, the IRS said, we just don't know the numbers of how many are dismissed because of timeliness when we're dealing with a pro se or a low-income taxpayer. And to get back to Congress's intent here, and to Henderson specifically, they say, you know, the commissioner says that 30 days, it was meant to be very, very short and quick. The same argument was made in Henderson and rejected. The argument there was before this legislation was passed, there was absolutely no judicial review at all. And so the government argued, well, yeah, they gave you judicial review, but they meant it to be strict and jurisdictional, and the court rejected that argument there because it was veteran-friendly legislation. The same is true here. It was intended to protect the taxpayer. If Congress wanted it to be especially fast, it would have put in other deadlines to require a CDP hearing to be heard in a particular period of time, a determination to be made. Instead, I think we talked about D3 earlier, it says that the Office of Appeals retains jurisdiction with respect to the determination. This is an iterative process. There is a back and forth. And in the end, it's about providing equity to the taxpayer. The amicus briefs are replete with examples of individuals who did not get their day in court because the tax court deemed this deadline to be jurisdictional and not subject to equitable tolling. Ms. Castillo's case is currently pending in the Second Circuit. It is a perfect example of why this Congress, who passed the statute, would not have wanted this to be the rare and harsh jurisdictional deadline. Thank you. Thank you, Counsel. The case is submitted.